21 N.J. Super. 304 (1952)
91 A.2d 169
CHARLES G. WELCHMAN, SUING AS A STOCKHOLDER OF GUSTAV GLASER CO., INC., FOR THE BENEFIT OF HIMSELF AND ALL OTHER STOCKHOLDERS SIMILARLY SITUATED, PLAINTIFF, AND ALSO ON BEHALF AND IN THE RIGHT OF GUSTAV GLASER CO., INC., DEFENDANT,
v.
FREDERICK H. KOSCHWITZ AND MALCOLM G. PECK, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 1, 1952.
*306 Mr. Thornton C. Land, attorney for plaintiff.
Messrs. Ruback, Albach & Weisman, attorneys for defendants Koschwitz and Peck.
Mr. David M. Satz, attorney for defendant Gustav Glaser Co., Inc.
GRIMSHAW, J.S.C.
This action was filed by the plaintiff on behalf of and for the benefit of the defendant corporation *307 Gustav Glaser Co., Inc. It is essentially a controversy between the two majority stockholders.
Various charges of misconduct on the part of the defendants Peck and Koschwitz, directors of the Glaser Company, are set forth in the complaint. Most of the actions to which exception is taken were matters within the powers of the corporation and in furtherance of its objects. As to them there is no proof that the directors acted in bad faith or that they failed to exercise honest judgment. Under such circumstances this court will not interfere. Ellerman v. Chicago Junction Railways, etc., Co., 49 N.J. Eq. 217 (Ch. 1891).
There are, however, two corporate actions to which further consideration must be given, namely, a resolution of the board of directors, dated July 13, 1951, purporting to cancel a stock purchase agreement, and another resolution of the board, dated September 25, 1951, purporting to cancel an option agreement between the defendant Koschwitz and the company.
The defendant corporation was originally wholly owned by the man whose name it bears. Upon his death the plaintiff Welchman, the defendant Peck and one Carl Larson, all employees of the company, bought it from the Glaser estate. The company was originally incorporated under the laws of the State of New York. In 1944 the business activities were transferred to New Jersey and a New Jersey corporation bearing the same name was formed and took over the assets of the New York company.
Welchman, Peck and Larson were very anxious to retain control of the company. In furtherance of their desire they executed several agreements under the terms of which the corporation was to purchase and place in its treasury the stock of any of the three who might die or retire.
On December 30, 1948, Welchman, Peck and Larson, together with the Glaser Company, executed the last of a series of stock purchase agreements. In brief, this agreement provided for the assignment to themselves, as trustees, of all *308 of the stock held by Welchman, Peck and Larson. It also provided for the assignment to the trustees by the corporation, of policies of insurance in the amount of $100,000, held by the company upon the lives of each of the principals. The corporation was to pay the premium upon the policies. Upon the death of any one of the three principals, the stock held by his estate was to be purchased, the proceeds of the policy upon his life being used for that purpose. The purchase price was $105 per share or such other amount as might be agreed on by the stockholders. The stock holdings of Welchman, Peck and Larson were listed as 934 shares each. The agreement provided that it was to cover any additional shares which might thereafter be acquired. The other provisions of the contract need not concern us at this time.
Carl Larson died in November of 1949. His executor sought payment for his stock at the rate of $105 per share in accordance with the provisions of the contract. At first, payment was resisted by Welchman, who wanted to pay less for the stock. However, upon threat of suit, he agreed to abide by the terms of the contract. The stock was purchased and retired.
After the Larson stock was obtained and placed in the treasury, the stockholders were Peck, with 934 shares, Welchman with 934 shares, and Koschwitz with six shares. Koschwitz has been the attorney for the company since its beginning, except for a brief period. He is one of the directors. In February of 1944 he received three shares of stock of the Glaser Company in part payment of a claim for legal services. In 1946 Koschwitz executed and delivered to the defendant corporation an option agreement under the terms of which he gave the company an option to purchase his three shares of stock within two months following his death or the death or retirement of any of the majority stockholders.
Thereafter, as a result of the payment of a stock dividend, the number of shares held by Koschwitz was increased to *309 six. On November 9, 1948, he executed with the company an agreement which, in part, is as follows:
"In consideration of the sum of One ($1.00) Dollar, receipt of which is hereby acknowledged, and in further consideration of the mutual promises herein contained, I hereby agree that, upon my death or upon the death or retirement of any such stockholders  Messrs. Welchman, Peck or Larson  said Gustav Glaser Co., Inc. shall have the exclusive right and option for a period of two (2) months thereafter to purchase out of surplus my said shares and any additional shares of stock of said company that I may hereafter acquire, at the price of $105 per share. The price per share for said stock may be changed at any time hereafter by written amendment of this agreement signed by the undersigned and the corporation. A notation of such change shall be made on the annexed schedule.
A notation shall be placed on each of my said stock certificates to the effect that said stock is being held subject to the terms and conditions of this agreement.
In case the undersigned desires at any time to sell, pledge or otherwise dispose of his said stock, or any part thereof, the same shall be tendered to the corporation which agrees to purchase the same at the price above provided for.
The purpose and intent of this agreement is to assist and cooperate with Messrs. Welchman, Peck and Larson in maintaining among themselves the equality of stock ownership in said company which they have endeavored to maintain ever since the company was formed.
This agreement shall be binding upon my heirs, executors and assigns and upon the successors and assigns of the company."
After the death of Larson trouble arose between Welchman on the one hand and Peck and Koschwitz on the other. Welchman says that the two other directors were determined to drive him from the company. They say that Welchman's conduct of the company's business and his attitude toward employees made necessary his replacement as president and active head. However that may be, on July 13, 1951, the board of directors of the Glaser Company, with Peck and Koschwitz voting in the affirmative and Welchman in the negative, removed Welchman from the office of president and elected Peck in his place. On the same day, by the same vote, the stock purchase agreement of December 30, 1948, was cancelled.
*310 From the evidence before me, I am unable to say that the removal of Welchman as president of the company was without justification. That action will not be disturbed. However, so far as the cancellation of the stock purchase agreement is concerned, the situation is different. That contract, according to its terms, may not be amended or cancelled without the consent of all of the parties, and Welchman has refused his consent to its alteration.
Defendants maintain that their action in voting to cancel the agreement was proper. They argue that the contract, in effect, permits the purchase of its corporate stock by the company other than by the use of its surplus. They say, also, that the insurance payments constitute a dangerous drain on the company treasury which they as directors were obligated to stop.
There is no competent proof that the payments constituted a dangerous drain on the treasury. And defendants' concern, manifested after four years, is not convincing.
The contract itself does not prejudice the interests of the stockholders. And, since the rights of creditors are not affected, the contract is not objectionable. Whitfield v. Kern, 122 N.J. Eq. 332 (E. & A. 1937).
As a matter of fact, defendants' defenses are after-thoughts. It is clear that the contract was cancelled at Peck's insistence and for his protection. Peck regretted his bargain. The controversy which followed the death of Larson made him apprehensive that a similar situation would arise if he predeceased Welchman. Peck endeavored to obtain Welchman's consent to changes in the agreement. Failing in this, Peck, with the assistance of Koschwitz, used the corporate structure to accomplish his ends. The action constituted a fraud which equity will not permit to go unredressed.
On September 25, 1951, the board of directors, over the opposition of Welchman, cancelled the Koschwitz option. This action is defended on the ground that the option was without consideration and could be withdrawn by Koschwitz *311 at any time. Defendants overlook the fact that Koschwitz prepared the agreement. He was and is the legal adviser of the company. He intended that the agreement should be binding. It was accepted as such by the company. He will not be heard to challenge its legality.
The cancellation of the option agreement by the board of directors of the corporation was beneficial to Koschwitz. No corresponding benefit accrued to the corporation. In view of his interest, the participation of Koschwitz in the vote to cancel the contract was improper. Robotham v. Prudential Insurance Co., 64 N.J. Eq. 673 (Ch. 1903). Without his vote the resolution would not have passed.
The proofs furnish no support for plaintiff's demand that Koschwitz be compelled to surrender his stock at this time. Only on the happening of one of the events set forth in the option agreement, has the company the right to require the surrender of the Koschwitz stock.
There will be a judgment setting aside the resolutions of July 13, 1951 and September 25, 1951.